IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TARONE M. JONES,

    **Plaintiff,**

v.        CIVIL ACTION NO. 1:11cv115
        (Judge Keeley)

UNITED STATES OF AMERICA,
WARDEN JAMES CROSS,
J. CROGAN,
J. COAKLEY,
H. BROYLES,
M. WEAVER,
T, BROWNE-STOBBE,
B. FRIEND,
L. ALARCON,
UNITE MANAGER R. MILTON,
J DICKSON,
W. DOBUSHAK,
D. SWEENEY,

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on July 8, 2011, by filing two separate claims, one under the Federal Tort Claim Act ["FTCA"], and the other pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,</u> 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On August 1, 2011, the plaintiff was granted leave to proceed *in forma*

*pauperis*, and on August 17, 2011, he paid his initial partial filing fee. On November 2, 2011, in an effort to clarify the plaintiff claims, he was sent a Notice of Deficient Pleading and directed to file his complaint using this court's approved forms for a FTCA and a <u>Bivens</u> action. He filed the required forms on November 23, 2011.

The undersigned conducted an initial review of the plaintiff's complaints on April 2, 2012, and directed that the Clerk issue 60 day summonses for each defendant. On August 10, 2012, the defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On August 23, 2010, a <u>Roseboro</u> Notice was issued, and on September 13, 2012, the plaintiff filed a response.

## II. **The Plaintiff's claims**

The plaintiff is a federal inmate, currently incarcerated at FCI Otisville, which is located in Otisville, New York. However, his claims surround the period from March 2009 through July 2011, and concern his medical care at USP Hazelton. The plaintiff alleges that during this time he suffered from a serious medical condition, namely a rectal prolapse. In support of his Bivens complaint, the plaintiff alleges that the defendants "failed to provide [him] adequate medical care and attention, failed to adopt rules, standards customs and policies, delayed and denied [sic] [him] adequate medical need, attention and care for months on different occasions." (Doc. 24, p. 33). In support of his FTCA, the plaintiff alleges that he suffered a personal injury as the result of "the malpractice acts of U.S.P. Hazelton's employees of the Federal Government of [his] serious need while acting within the scope of their office of employment." (Doc. 19, p. 33).

For relief, the plaintiff seeks $50 million dollars compensation from the defendants in their

official capacity. In addition, he seeks $10 million dollars in compensatory damages from the defendants in their individual capacities. and the pain and suffering [he] had to endure at United States Penitentiary Hazelton.[1]

### III. The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

A. The plaintiff's FTCA claim must be dismissed for failure to produce a certificate of merit as required by West Virginia law;

B. The plaintiff's claims against the non-medical defendants must be dismissed in light of their lack of any personal involvement in the alleged constitutional deprivations;

C. The claims against defendants Boyles and Brown-Stobbe must be dismissed, in that they are public health service personnel and are immune from suit;

D. The defendants were not deliberately indifferent to plaintiff's medical needs;

E. The defendants are entitled to qualified immunity; and

F. Claims against the defendants in their official capacities must fail.

### IV. The Plaintiff's Response

In his response, the plaintiff reiterates his claims regarding the alleged indifference to serious medical condition. In addition, with respect to his FTCA, the plaintiff notes that West Virginia Code § 55-7B-6(c), provides that no screening certificate of merit is necessary where the cause of action is based upon a well-established legal theory of liability which does not require expert testimony

---

[1]The undersigned notes that the plaintiff Bivens complaint and FTCA complaint are nearly identical and contain the same handwritten pages, administrative remedies, and responses inserted within the form complaints.

supporting a breach of the applicable standard of care. The plaintiff maintains that a screening certificate of merit is not necessary in his case because his injuries are within the understanding of lay jurors by resort to common knowledge and experience. With respect to the non-medical defendants, the plaintiff's alleges that they each had personal knowledge of his condition and were aware of his diagnosis and failed to intervene on his behalf and/or failed to notify medical staff when they observed obvious signs of his illness. The plaintiff also maintains that many of the individual defendants failed to help him with his administrative remedies and tort remedy. With respect to defendants Boyles and Brown-Stobbe, who are Public Health Service personnel, the plaintiff argues that regardless of their status, his FTCA must be allowed to continue. The plaintiff also argues that he has satisfied both the objective and subjective components necessary to establish deliberate indifference. Finally, he argues that the defendants are not entitled to qualified immunity.

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

4

the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

6

party." Matsushita at 587 (citation omitted).

## VI. Analysis

### A. Bivens

### Defendants Broyles and Brown-Stobbe

Defendants Broyles and Brown-Stobbe are employees of the United States Public Health Service. Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against an employee of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions, is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672). Section 233 (a):

> protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.

Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); Apple v. Jewish Hosp. And medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), defendants Boyles and Browne-Stobbe enjoy absolute immunity from personal liability for all claims arising from the medical care- they provided the plaintiff, and they must be

7

dismissed as defendants in this action.

**8th Amendment Medical Claims**

To state a claim under the Eighth Amendment, the plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[2]

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

The Declaration of Walter Dobushak and the plaintiff's medical records establish that after his initial screening at USP Hazelton on March 3, 2009, the plaintiff was given a complete physical

---

the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

9

on March 11, 2009. At that time, he reported that he had a history of rectal bleeding over several years and was suppose to have had a colonoscopy. Based on his stated medical history, a Fecal Occult Blood ("FOB") test was performed and was negative. (Doc. 65-2, p. 23). On March 31, 2009, blood work was done which revealed that the plaintiff had iron deficiency anemia. He was given an iron supplement, and a plan was developed to seek a gastroenterology consult. (Doc. 65-2, pp. 27-28). On April 16, 2009, blood work was completed again, and on April 21, 2009, the results showed that the plaintiff's iron deficiency had improved, and he was asymptomatic. (Doc. 65-2, p. 30). On May 19, 2009, the plaintiff was scheduled for another FOB test. Despite being warned of the dangers of foregoing this test, the plaintiff refused the test and signed a treatment refusal form. (Doc. 65-2, p. 32).

On July 17, 2009, the plaintiff was sent to Monongalia General Hospital for a scheduled colonoscopy to address his anemia, weight loss, and rectal bleeding. The postoperative diagnosis was anemia, weight loss, rectal bleeding, small hiatal hernia, mild proctitis and large internal hemorrhoids. After the colonoscopy was completed, the physician noticed a large rectal prolapse[3]. The plaintiff explained to the physician that he did not inform him of his condition because he was embarrassed in front of the prison staff who accompanied him. The treating physician recommended that the plaintiff return to his office for an appointment in two weeks' time to address his history of rectal prolapse. (Doc. 65-2, pp. 34-37). On July 21, 2009, the plaintiff was seen in Health Services for a follow up to his outside appointment. The clinical encounter notes indicate that the plaintiff

---

[3]According to the Declaration of Dr. Dobushak, rectal prolapse is a condition in which "the rectum (the lower end of the colon, located just above the anus) becomes stretched out and protrudes out of the anus, especially following a bowel movement. The lining of the rectal tissue may be visible and may bleed. The prolapse can be pushed back into place, but over time surgery may be needed to repair the problem." (Doc. 65-1, p. 2).

would require a followup visit with the outside physician for evaluation with consideration for surgical intervention. (Doc. 65-2, p. 41). The plaintiff did not appear for scheduled lab work on August 6, 2009. (Doc. 65-3, p. 2).

Between September 3, 2009 and December 9, 2009, the plaintiff continued to be seen in the chronic care clinic to monitor his rectal bleeding and check his vital signs until the surgical request to repair the prolapse could be approved and scheduled.[4] (Doc. 65-1, p. 2). During this three month period, the plaintiff twice refused lab work and occult blood testing that could detect blood loss. (Doc. 65-3, pp. 15, 16).

On December 9, 2009, the plaintiff presented to Health Services with a large hematochazia and with dizzy, dyspneic and felt cold. He was transferred to the emergency room at Monongalia General Hospital, where he was seen by the same physician who performed his colonoscopy. The plaintiff reported that the had persistent intermittent recurrent rectal prolapse with significant amounts of bleeding during the episodes, but was able to push the prolapse back in. At the emergency room, he was found to be severely anemic and was given a blood transfusion. He was released from the hospital on December 13, 2009. (Doc. 65-3, pp. 18-22).

On December 30, 2009, the plaintiff had surgery to repair the prolapse. He was released from the hospital on January 13, 2010, and was seen that day at health services for a follow up.(Doc. 65-3, pp. 24-28). He was evaluated at health services on January 14, 15, and 18, 2010. On January 22, 2010, the plaintiff was sent back to the local hospital after complaining of difficulty having bowel movements and reports of severe pain. He returned from the hospital the following day. (Doc.

---

[4]Specifically, the plaintiff was seen on October 9, 2009, October 27, 2009, October 29, 2009, November 13, 2009, November 17, 2009, November 27, 2009, and November 30, 2009.

65-3, p. 39).

On February 18, 2010, the plaintiff did not show up for a scheduled medical appointment. (Doc. 65-3, p. 42). On March 5, 2010, he was seen in health services again complaining of bleeding from the rectum. Upon examination, it was determined that hemorrhoids were causing the bleeding. He was seen again on April 21, 2010, and he reported that the bleeding was minimal. His labs were stable. (Doc. 65-3, p. 47). On May 10, 2010, the plaintiff was seen in health services with pain in his flank and low back. He denied rectal bleeding and was given pain medication.[5](Doc. 65-3, p. 48). On May 12, 2010, he did not show up to his medical appointment. (Doc. 65-3, p. 49).

On May 14, 2010, the plaintiff had an outpatient appointment to follow up on his rectal prolapse repair with a doctor in the Digestive Diseases section of West Virginia University. A full examination was completed, and the impression was that he had rectal bleeding due to internal hemorrhoids. (Doc. 65-3, pp. 50-52).

Thereafter, the plaintiff failed to show up for his follow up appointments on May 25, June 2, June 10, and June 16, 2010.(Doc. 65-4, pp. 2-4). However, he was seen on June 23, 2010 for abdominal pain.(Doc. 65-4, p. 6). He did not show up for lab work on July 18, 2010 and August 25, 2010. (Doc. 65-4, pp. 7-8). On October 7, 2010, he was seen at a scheduled chronic care visit and received a full physical. At that time, he denied any rectal bleeding. (Doc. 65-4, pp. 9-13). On January 3, 2010, the plaintiff was seen again at a chronic care appointment. He complained of recurrence of rectal bleed with rectal prolapse.

---

[5]The clinical encounter notes on this date reflect that the plaintiff was strongly reminded that non-steroidal analgesics can aggravate GI bleeding. Although the plaintiff fully understood this, he stated his quality of life was severely impaired by the pain that is relieved by motrin Therefore, he was cautiously allowed motrin while monitoring his hemoglobin and hematocrit as well as his iron levels.

On February 24, 2011, he had a consultation with an outside specialist. The plaintiff indicated that still had rectal bleeding on occasion on the toilet tissue only. He denied any external hemorrhoids at that time but stated that he did have a rectal prolapse of approximately 1 centimeter. Following a physical exam, the specialist recommended a colonoscopy with possible hemorrhoid ligation. (Doc. 65-4, pp. 20-21). On March 15, 2011 and April 28, 2011, the plaintiff was seen in the health services office and received hydrocortisone acetate suppositories to relive his hemorrhoid irritation. (Doc. 65-4, pp. 23-26). On May 11, 2011, the plaintiff did not show up for his medical appointment. (Doc. 65-4, p. 27).

On June 16, 2011, the plaintiff again was sent to an outpatient specialist. He stated that he still had rectal bleeding on occasion on the toilet tissue only and stated that had rectal prolapse of approximately 1 centimeter. He also stated that had difficulty with constipation. A colonoscopy with possible hemorrhoid ligation was scheduled for June 29, 2011. (Doc.65-4, pp. 29-31). For reasons that are unclear, the colonoscopy was not performed. However, the plaintiff continued to be monitored in health services through scheduled chronic care appointments and sick call visits until his transfer to another institution on April 9, 2012. During that approximately nine month period, the plaintiff never presented to health services with an acute condition. His hemorrhoids and small prolapse were monitored and managed through medication such as suppositories, stool softeners, iron supplements and pain relievers. (Doc. 65-1, p. 4).

Here, even accepting that the plaintiff suffered from a serious medical condition, thus satisfying the first element of an Eighth Amendment claim, the medical record cited above clearly establishes that the plaintiff received adequate medical supervision at USP Hazelton. He was seen countless times at both the chronic care clinic and sick call to address his medical concerns. He was

given lab tests and medication, as needed. In addition, he was transported to the emergency room when necessary and was seen by an outside specialist on several occasions. Furthermore, to the extent that the plaintiff may be alleging that his medical care at FCI Gilmer amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Moreover, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," he did receive care. Accordingly, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants have been deliberately indifferent to his medical needs, and accordingly, the plaintiff's complaint as it relates to his 8th Amendment claims under Bivens should be dismissed for failure to state a claim.

**Non-medical personnel or claims**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. "Because vicarious liability

is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcraft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own conduct." Id. at 1948-49.

In addition to individuals directly involved with his medical care, the plaintiff has named as individual defendants his Unit Managers, R. Milton and D. Sweeeney, his Unit Case Manager, L. Holcomb, his Unit Counselor, J. Dickson, the Warden, James Cross, and Associate Wardens, J. Crogan and J. Coakley. However, the plaintiff does not allege any personal involvement on the part of these individual with his medical care.

Instead, with respect to Warden Cross and Associate Wardens Crogan and Coakley, the plaintiff makes a broad allegation that they failed to ensure that he received proper medical treatment and failed to adopt appropriate policies, rules, standards and customs. However, because it is clear that the medical staff was not deliberately indifferent to his medical needs, the plaintiff's allegation that these individuals failed to ensure that he received proper medical care is without merit. Furthermore, non-medical personnel may rely on the medical staff regarding the proper treatment of inmates. Finally, it appears that the plaintiff, in reality, has named these defendants merely in their official capacities as the Warden and Associate Wardens at USP Hazelton. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits... 'generally present only another way of pleading an action against an entity oh which an officer is an agent.'").

With respect to the members of his Unit team, the plaintiff indicates that they interfered with his access to administrative remedies. First, it is pertinent to note that the defendants have not

alleged, as an affirmative defense, that the plaintiff failed to exhaust his administrative remedies. In fact, it would appear that the defendants have conceded that the plaintiff exhausted his administrative remedies. However, even if these defendants did interfere with his access to administrative remedies, the same would not state a cause of action. Under Bivens, the plaintiff must demonstrate a deprivation under color of law of a right, privilege or immunity secured by the Constitution or the laws of the United States in order to state a claim for relief  However, federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. Therefore, BOP employees' refusal to respond to inmates' administrative complaints and conduct which otherwise prevents inmates from pursuing such complaints are not actionable under Bivens. See Murphy v. Inmate Systems Management, Inc., 2008 WL 793631 (S.D.W.Va. March 20, 2008)

**B. Federal Tort Claim Act**

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

The Supreme Court has held that "a person can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). However, the FTCA does not create a new cause of action. Medina v. United States. 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the

16

same respect as a private person would be liable under the law of the place where the act occurred." Id.

Under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

### § 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

However, the plaintiff maintains that his case falls within the following exception to subsection 6 (b):

> Notwithstanding any provision of this code, if a claimant or his counsel, believe that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a beach of the applicable standard of care, the claimant or his or her counsel shall file a statement specifically setting forth the basis of the alleged liability of the heath care provider in lieu of a screening certificate of merit.

Id. § 55-7B-6(c).

17

Here, the plaintiff has filed neither a screening certificate nor a statement specifically setting forth the basis of the alleged liability of the healthcare providers. Rather, in response to the defendants' Motion to Dismiss/Summary Judgment, the plaintiff simply argues that his injuries are within the understanding of lay jurors by a resort to common knowledge and experience, and therefore, he may be excused from filing a screening certificate of merit.

The undersigned recognizes that in limited circumstances a screening certificate is unnecessary. For instance, in Johnson v. United States, 394 F.Supp. 2d 854 (S.D.W. Va. 2005), Judge Chambers determined that the plaintiff's statement in his administrative grievance, that his doctor had "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection," set forth a well-established theory of liability sufficient to alert the defendant about the precise nature of his claim, and thus met the requirements of § 55-7B-6(c).

Johnson, however, is a rare exception to the "general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." See Banfi v. Am. Hosp. For Rehab, 529 S.E.2d 600, (W.Va. 2000). A court shall require expert testimony except where the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis by resort to common knowledge and experience." Id. Unlike the facts in Johnson, those presented in this complaint do not preset "noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Nor, does the plaintiff present facts that establish a "lack of care or want of skill that is so gross as to be apparent." Accordingly, the plaintiff is not excused from filing a certificate of merit, and his FTCA must be dismissed. See O'Neil v. United States, No. 5:07cv258, 2008 WL 906470, at *5 (S.D.W.Va. Mar. 31, 2008) (finding that the plaintiff was not excused from filing a certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and

cardiomyopathy are not within the understanding of lay jurors by resort to common knowledge and experience). See also Morerell v. United States, No. 5:05cv171, 2007 U.S. Dist. LEXIS 27286 (N.D.W. Va. Apr. 12, 2007)(Stamp. J.) (finding that the plaintiff was not excused from filing a certificate of merit because he had not established the applicable standard of care for the treatment of a knee injury).

## VII. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 63) be **GRANTED**; the plaintiff's Motion for Preliminary Injunction and/or Motion for Declaratory Relief from Unavailable Medical Care (Doc. 57) be **DENIED AS MOOT**, and this case be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the

docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 18, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE