```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TARONE M. JONES,**

    **Plaintiff,**

**v.**  //  **CIVIL ACTION NO. 1:11CV115**
                               **(Judge Keeley)**

**UNITED STATES OF AMERICA, JAMES
CROSS, J. CROGAN, J. COAKLEY, H.
BOYLES, M. WEAVER, T. BROWN-STOBBE,
B. FRIEND, I. ALARCON, R. MILTON,
L. HOLCOMB, J. DICKSON, W. DOBUSHAK,
and D. SWEENEY,**

    **Defendants.**

## ORDER ADOPTING REPORT AND RECOMMENDATION

Pending before the Court is the magistrate judge's Report and Recommendation ("R&R") concerning the civil action filed by Tarone M. Jones. For the reasons set forth below, the Court **ADOPTS** the R&R and **DISMISSES** this case.

### I.

On July 28, 2011, the pro se plaintiff, inmate Tarone M. Jones ("Jones"), filed a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq., and Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against the United States of America and thirteen Federal Bureau of Prisons ("BOP") employees who worked at the U.S. Penitentiary Hazelton ("USP Hazelton") between March 2009 and June 2011

**JONES v. USA, ET AL.**                                              **1:11CV115**

**ORDER ADOPTING REPORT AND RECOMMENDATION**

(collectively "the defendants"). (Dkt. Nos. 1, 2, 19, 24).[1] Jones, who suffers from a recurrent rectal prolapse, alleges that the defendants were deliberately indifferent to, and negligent in their treatment of, his serious medical needs while he was incarcerated at USP Hazelton. The Court referred this matter to United States Magistrate Judge John S. Kaull for initial screening and a report and recommendation in accordance with LR PL P 2.

On August 10, 2012, the defendants filed a joint Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Dkt. No. 63). The magistrate judge issued a Roseboro notice to Jones on August 23, 2012 (dkt. no. 69), and he filed a response in opposition to the defendants' motion on September 13, 2012. (Dkt. No. 74). The defendants did not file a reply.

Magistrate Judge Kaull issued an R&R on December 18, 2012, in which he recommended that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment be granted and this case be dismissed with prejudice. (Dkt. No. 84 at 19). The magistrate judge determined that (1) Jones' Bivens claims must be dismissed because his allegations, as well as the medical evidence of record, do not support his claim of deliberate indifference; and

---

[1] With the Court's leave, Jones supplemented his initial complaint (dkt. nos. 1, 2) on November 23, 2011. (Dkt. Nos. 19, 24).

**JONES v. USA, ET AL.**                                                             **1:11CV115**

### ORDER ADOPTING REPORT AND RECOMMENDATION

(2) Jones' FTCA claims must be dismissed because he failed to comply with the statutory prerequisites for filing a medical negligence action under West Virginia law.

Jones filed objections to the R&R on January 7, 2013, challenging the magistrate judge's recommendation to dismiss his claims. (Dkt. No. 86). The Court has conducted a <u>de novo</u> review of the issues raised and, for the reasons that follow, concludes that these objections are without merit.

### II.

Jones' claims arise from the allegedly deficient medical care he received between March 2009 and June 2011. As his medical treatment is set forth in detail in the R&R, and the Court will only briefly summarize the relevant portions below.

Upon entry to USP Hazelton on March 3, 2009, medical staff performed an initial health screening on Jones and, on March 11, 2009, gave him a complete physical. At that time, he advised medical staff that he had suffered from rectal bleeding for a number of years. Patricia Corbin, P.A., performed a rectal exam on Jones that day, and found no abnormalities.

A few weeks later, on March 31, 2009, the defendant Walter Dobushak, D.O. ("Dr. Dobushak"), saw Jones for a follow-up appointment. Dr. Dobushak administered blood tests, determined that

**JONES v. USA, ET AL.**                                                        **1:11CV115**

**ORDER ADOPTING REPORT AND RECOMMENDATION**

Jones was anemic, and prescribed an iron supplement. The next day, the defendant Dr. Inerio Alarcon, M.D., requested a consultation with an outside gastroenterologoy specialist on Jones' behalf. Dr. Dobushak again tested Jones' blood on April 16, 2009, and determined that Jones' iron deficiency had improved. Jones was scheduled for a fecal occult blood test on May 19, 2009, to determine whether he was suffering from blood loss in his gastrointestinal tract, but he refused treatment.

On July 17, 2009, Jones was sent to Monongalia County General Hospital for a scheduled colonoscopy. Dr. John J. Wolen, M.D., performed the procedure, and postoperatively diagnosed Jones with anemia, weight loss, rectal bleeding, a small hiatal hernia, mild proctitis, and large internal hemorrhoids. Dr. Wolen also noted that Jones had a large rectal prolapse. Jones advised Dr. Wolen that he had not mentioned this condition prior to the colonoscopy because he was embarrassed to mention it in front of the accompanying prison guards. Dr. Wolen recommended that Jones have a follow-up in two weeks to address a course of treatment for the rectal prolapse.

Four days after his colonoscopy, on July 21, 2009, Jones was seen by Dr. Dobushak for a follow-up. At that time, Dr. Dobushak requested a surgical consultation with an outside specialist for

**JONES v. USA, ET AL.**                                         **1:11CV115**

**ORDER ADOPTING REPORT AND RECOMMENDATION**

evaluation of Jones' rectal prolapse. Although Jones subsequently failed to appear for scheduled blood work on August 6, 2009, he was seen at USP Hazelton's chronic care clinic at least seven times between September 3, 2009, and December 9, 2009, to monitor his health until the surgical request to repair the prolapse could be approved. During this three-month period, Jones twice refused lab work and occult blood testing that could detect blood loss.

On December 9, 2009, Jones presented to health services with fresh rectal bleeding and dizziness. He was transferred to the emergency room at Monongalia County General Hospital, where he was again seen by Dr. Wolen. Dr. Wolen found that Jones was severely anemic and admitted him to the hospital for a blood transfusion, where he remained until December 13, 2009. A little over two weeks later, on December 30, 2009, Jones returned to the hospital, and Dr. Wolen surgically repaired the rectal prolapse. Jones returned to USP Hazelton on January 13, 2010.

After his surgery, Jones was evaluated at health services on January 13, 14, 15, and 18, 2010. On January 22, 2010, Jones was sent back to Monongalia County General Hospital after complaining of difficult bowel movements and severe pain. He returned to USP Hazelton the following day, where, as detailed by the magistrate judge, he continued to be seen regularly by medical staff. In

**JONES v. USA, ET AL.** **1:11CV115**

**ORDER ADOPTING REPORT AND RECOMMENDATION**

addition to regular appointments, blood work, and prescription medications, Jones' medical treatment included several appointments with outside gastroenterologoy specialists to address his recurrent rectal bleeding and small rectal prolapse. He continued to be regularly monitored by USP Hazelton medical staff until he was transferred to another institution on April 9, 2012.

### III.

### A.

The Court turns first to Jones' argument that he has a viable deliberate indifference claim arising under Bivens. Specifically, Jones contends that all thirteen of the individual defendants "were personally involved in the treatment (lack of)" of his rectal prolapse, and that each defendant is responsible for "delay[ing] and den[ying] him access and medical attention." (Dkt. No. 86 at 4).

To state a cognizable claim for denial of medical care in violation of the Eighth Amendment under Bivens, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976). Specifically, a plaintiff must establish two distinct elements: first, that he suffered from an objectively "serious medical condition" not "timely or properly

6

**JONES v. USA, ET AL.** 1:11CV115

ORDER ADOPTING REPORT AND RECOMMENDATION

treated"; and second, that each named defendant subjectively acted with "deliberate indifference" toward his condition. Harden v. Green, 27 F. App'x 173, 178 (4th Cir. 2001); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (liability under Bivens is "personal, based upon each defendant's own constitutional violations").

The Court agrees with the magistrate judge that, even assuming Jones' rectal prolapse is a "serious" medical condition under the objective prong of Estelle, he has wholly failed to allege, much less show, that any of the thirteen named defendants in this case were deliberately indifferent to his serious medical needs. To the contrary, as thoroughly discussed by Magistrate Judge Kaull in the R&R, Jones' medical records demonstrate that he received regular and frequent medical care at USP Hazelton, beginning with his initial screening on March 3, 2009, and continuing until April 9, 2012, when he was transferred to another institution. Indeed, Jones was seen "countless times" by medical staff during his tenure at USP Hazelton, where he received regular blood tests and a myriad of medications, including suppositories, stool softeners, iron supplements, and pain relievers. (Dkt. No. 84 at 13). His treatment also included at least three separate trips to Monongalia General Hospital, where he underwent both a colonoscopy and a prolapse

**JONES v. USA, ET AL.** 1:11CV115

**ORDER ADOPTING REPORT AND RECOMMENDATION**

repair surgery. Id. at 11-12. He was also sent to an outside specialist once in 2010, for a post-surgical follow-up, and twice in 2011, for rectal bleeding. Id. at 11-13. Far from demonstrating deliberate indifference, the medical evidence of record shows that USP Hazelton staff were extremely responsive to the plaintiff's medical needs.

In sum, none of the information contained in Jones' medical records supports his claims of constitutionally inadequate medical care, nor has he provided even a scintilla of evidence that would support such a claim. Instead, he has simply repeated the vague, conclusory, and unsupported allegations of his complaint, i.e., that largely undifferentiated individuals at USP Hazelton were "all" aware of his condition and "acted subjectively indifferent to his medical[] . . . needs." (Dkt. No. 86 at 5). These unsubstantiated and conclusory allegations, however, are insufficient to carry his deliberate indifference claims past summary judgment. See Young v. City of Mount Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care.").

**JONES v. USA, ET AL.** 1:11CV115

ORDER ADOPTING REPORT AND RECOMMENDATION

For all these reasons, the Court **OVERRULES** the plaintiff's objections to the R&R and **DISMISSES** his Bivens claims **WITH PREJUDICE.**

**B.**

The Court turns next to Jones' medical negligence claims. The FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred," Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001), and as such, the substantive law of West Virginia controls this matter. Prior to filing such an action in West Virginia, however, Jones must comply with the requirements of W. Va. Code § 55-7B-6:

> [a]t least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1)[t]he expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in

9

**JONES v. USA, ET AL.**                                                         **1:11CV115**

**ORDER ADOPTING REPORT AND RECOMMENDATION**

> injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted.

W. Va. Code § 55-7B-6(b). The only exception to this requirement is found in W. Va. Code § 55-7B-6(c):

> Notwithstanding any provision of this code, if a claimant or his counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

W. Va. Code § 55-7B-6(c).

The magistrate judge found that Jones failed to file a screening certificate of merit as required by W. Va. Code § 55-7B-6(b), and that his claims are not exempt from this requirement under § 55-7B-6(c). Jones objects that his case fits into the statutory exception of § 55-7B-6(c) because "it is very possible that a jury may not require an expert to explain that the conduct of these prison officials and medical staff breached the applicable standard of care." (Dkt. No. 86 at 6).

Jones' arguments fail for several reasons. As a threshold matter, even if he believed he fell within the exception of W. Va. Code § 55-7B-6(c), he failed to file a "statement specifically setting forth the basis of the alleged liability of the health care

**JONES v. USA, ET AL.** 1:11CV115

**ORDER ADOPTING REPORT AND RECOMMENDATION**

provider in lieu of a screening certificate of merit." Thus, he failed to comply with the statutory requirements of either W. Va. Code § 55-7B-6(b) or (c). Second, Jones' speculative arguments notwithstanding, it is clear that this case is not an exception to "the general rule [] in medical malpractice cases [that] negligence or want of professional skill can be proved only by expert witnesses." Banfi v. Am. Hosp. for Rehab., 529 S.E.2d 600, 605 (W. Va. 2000). Jones will need to prove the appropriate standard of care for a rectal prolapse, deviation from that standard, and causation, all of which are plainly outside the common knowledge of lay jurors. See, e.g., Morrell v. United States, No. 5:05CV171, 2007 WL 1097871 (N.D. W. Va. Apr. 12, 2007). Accordingly, Jones cannot proceed under § 55-7B-6(c), and he has thus not satisfied the pre-suit requirements for filing his claims under West Virginia law.

The Court is mindful that "a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purpose." Westmoreland v. Vaidya, 664 S.E.2d 90, 96 (W. Va. 2008). Here, however, Jones has failed to demonstrate any good faith or reasonable effort to

11

**JONES v. USA, ET AL.**  1:11CV115

**ORDER ADOPTING REPORT AND RECOMMENDATION**

further the statutory purposes of reducing frivolous lawsuits and promoting pre-suit resolution of non-frivolous claims. Id. As such, the Court finds that dismissal of this case is appropriate. See, e.g., Cline v. Kresa-Reahl, 728 S.E.2d 87, 96-98 (W. Va. 2012). It thus **OVERRULES** the plaintiff's objections to the R&R and **DISMISSES** his FTCA claims **WITHOUT PREJUDICE**.[2]

**IV.**

For the reasons discussed, the Court:

1. **ADOPTS** the Report and Recommendation (dkt. no. 84);

2. **GRANTS** the defendants' Motion to Dismiss or, in the alternative, for Summary Judgment (dkt. no. 63);

3. **DISMISSES** the plaintiff's Bivens claims **WITH PREJUDICE** and his FTCA claims **WITHOUT PREJUDICE**;

4. **DENIES AS MOOT** the plaintiff's motion for a preliminary injunction (dkt. no. 57); and

---

[2] In light of the Supreme Court of Appeals of West Virginia's pronouncement that "the pre-suit notice of claim and certificate of merit provisions of W. Va. Code § 55-7B-6 are 'not intended to restrict or deny citizens' access to the courts,'" the Court declines to adopt the magistrate judge's recommendation to dismiss these claims with prejudice. Davis v. Mount View Health Care, Inc., 640 S.E.2d 91, 95 (W. Va. 2006) (quoting Syl. Pt. 2, Hinchman v. Gillette, 217 W.Va. 378, 618 S.E.2d 387 (W. Va. 2005)). If, and only if, the plaintiff complies with W. Va. Code § 55-7B-6(b), he may re-file his tort claims within the appropriate statutory period.

**JONES v. USA, ET AL.** 1:11CV115

**ORDER ADOPTING REPORT AND RECOMMENDATION**

    5.    **ORDERS** that this case be **DISMISSED** and **STRICKEN** from the docket of this Court.

If the plaintiff should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4 of the Federal Rules of Appellate Procedure.

It is so **ORDERED**.

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record and to the pro se petitioner, certified mail, return receipt requested.

Dated: March 12, 2013.

_____
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE